IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ALEXANDRA M. GAY,

               Plaintiff,

       v.

BLOUNT, INC., a foreign business corporation, as
successor to CARLTON COMPANY, INC., a
domestic business corporation,

               Defendant.

CV-10-773-ST

FINDINGS AND
RECOMMENDATION

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Alexandra M. Gay ("Gay"), filed this action against her former employer,

Carlton Company, Inc. ("Carlton"), on July 6, 2010.[1]  Carlton manufactures saw chain used for

chainsaws in the timber industry.  Carlton fired Gay in early March 2009, following her absence

---

[1]  Blount, Inc. ("Blount") acquired Carlton in September 2008.  However, documents post-dating the merger continue
to reference Carlton.  *E.g.*, Bremer Decl., Ex. 3, p. 24.  Thus, all references in this opinion will be to Carlton.

from work for several days due to a hospitalization resulting from complications associated with her high risk pregnancy.  Gay alleges five claims for relief against Carlton for:  (1) pregnancy discrimination in violation of 42 USC § 2000e(k) and ORS 659A.030 (First Claim); (2) unlawful denial of medical leave in violation of the Oregon Family Leave Act, ORS 659A.183 ("OFLA") (Second Claim); (3) disability discrimination (Third Claim) and failure to accommodate (Fourth Claim) in violation of the Americans with Disability Act, 42 USC § 12112 ("ADA"), and ORS 659A.112; and (4) wrongful discharge (Fifth Claim).

This court has federal question jurisdiction over Gay's federal statutory claims pursuant to 28 USC § 1331 and supplemental jurisdiction over Gay's related state law claims pursuant to 28 USC § 1367(a).  Gay has now filed a Motion for Summary Judgment (docket # 17), seeking an order granting summary judgment in her favor on liability on the Second and Fourth Claims. Carlton filed an associated Motion to Withdraw Admissions (docket # 22), which this court orally granted at the hearing on April 5, 2011 (docket # 33).  For the reasons that follow, Gay's Motion for Summary Judgment (docket # 15) should be GRANTED with respect to the Second Claim (OFLA) and DENIED with respect to the Fourth Claim (failure to accommodate in violation of the ADA and ORS 659A.112).

## **STANDARDS**

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law."  The moving party must show an absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial."  *Id* at 324, citing

FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but only [determine] whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted). A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

The substantive law governing a claim or defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F3d 1130, 1134 (9th Cir 2000) (citation omitted). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." *Farrakhan v. Gregoire*, 590 F3d 989, 1014 (9th Cir 2010), citing *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 255 (1986). In employment discrimination cases "very little evidence" is required to survive summary judgment "because the ultimate question is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by the factfinder, upon a full record. " *Schnidrig v. Columbia Mach., Inc.*, 80 F3d 1406, 1410 (9th Cir) (internal quotations, citation omitted), *cert denied*, 519 US 927 (1996).

## FINDINGS

### I. Undisputed Material Facts

Because all material facts must be viewed in the light most favorable to the non-movant, this court views the evidence most favorably to Carlton. A review of the parties' submissions[2] reveals the following facts:

---

[2] The parties have submitted documents with various attachments. Citations to affidavits, declarations, and depositions are identified by the last name of the affiant, declarant, or deponent, and citations are to the paragraph(s) of the affidavit or declaration or to the page(s) of the deposition transcript.

A.    **Carlton's Policies**

Carlton's Employee Handbook, signed by Gay on August 29, 2008, includes the

following provisions relating to attendance and job abandonment:

> ### ATTENDANCE AND PUNCTUALITY
>
> You hold an important job with this company.  Your
> punctuality and regular attendance at work are essential for
> efficient operations.  If you know in advance that you are going to
> be unavoidably late or absent, please notify your
> Supervisor/Manager so that substitute arrangements can be made.
> If you are unexpectedly unable to report on time and/or unable to
> work that day, regardless of what the reason may be, you are
> required to phone your Supervisor/Manager before the start of your
> shift.  If you cannot report for work, please let us know in advance
> by calling your Supervisor/Manager.  If you are sick, you must
> notify your Supervisor/Manager each day prior to your scheduled
> shift. . . .  Failure to call in shall be grounds for discharge.
>
> *            *            *
>
> ### JOB ABANDONMENT
>
> If you are absent for three consecutive days and have not
> either cleared your absence with your Supervisor/Manager to let
> him/her know you will be absent, your absence will be considered
> a voluntary termination effective the end of the third consecutive
> working day you are absent.

Bremer Decl., Ex. 3, p. 19

According to Carlton's Human Resources ("HR") Manager, Sandi Tabor, Carlton

experiences high employee turnovers due to attendance issues.  Tabor Decl., ¶ 3.  Carlton strictly

enforces its attendance policy and terminated 197 employees from 2000 to early 2010 for

violation of Carlton's attendance policy, including 93 employees for job abandonment.  *Id*, ¶ 3 &

Ex. 1.

**B.  Gay's Employment with Carlton and High Risk Pregnancy**

Gay commenced working for Carlton on September 2, 2008, as an Assembly Operator. About six weeks later, she received an attendance warning advising that since October 1, 2008, she had missed 16 hours of work with one day of no-call/no-show, which was unacceptable. Bremer Decl., Ex. 3, p. 24.  The warning advised Gay that further absences or tardies or failure to call in before the start of her shift over the next 90 days could subject her to discipline, up to and including termination.  *Id*.

Some years prior to her employment with Carlton, Gay became insulin dependent with Type 1 Diabetes.  Gay Depo., p. 77.  During her employment with Carlton, Gay had to test her blood seven to nine times a day.  *Id*, pp. 62-64.  She drew blood to test her blood sugar levels during breaks at her work station.  *Id*. p. 63.  In January 2009, Gay advised her supervisor, Kris Byrd ("Byrd"), that she was pregnant and that, due to her diabetes, her pregnancy was high-risk and would require several doctor's visits.  *Id*, pp. 58-59.  Byrd advised Gay that, because she had been on an attendance warning, she should use her vacation time to cover her absences and protect her attendance record.  Bryd Depo., p. 23.

**C.  Hospitalization and Calls to Carlton**

On February 24, 2009, Gay requested Friday, February 27, 2009 as a vacation day in order to attend a doctor's appointment.  Gay Depo., pp. 73-74; Bremer Decl., Ex. 3, p. 25.  Byrd granted that request.  *Id*.  At that appointment, Gay's doctor requested that she check into a hospital because she had been experiencing unacceptable fluctuations in her blood sugar levels. Gay Depo., p. 75.  Gay drove home to get various personal supplies and then drove back and checked into Legacy Emanuel Hospital.  *Id*, pp. 75-77.

5 - FINDINGS AND RECOMMENDATION

### 1. **March 2 and 3, 2009 Telephone Conversations**

Gay remained in the hospital over the weekend and into the next week.  On Monday, March 2, 2009, at Gay's request, a hospital employee telephoned Carlton and spoke with Byrd, explaining that Gay was in the hospital and would not be in to work that day.  *Id*, pp. 83-84; Bryd Depo., pp. 27-28.  Byrd advised Diana Davis ("Davis"), Carlton's HR Representative, about the call from the hospital.  Byrd Depo., pp. 27-28.

The following morning, on Tuesday, March 3, 2009, Gay called Byrd.  However, Gay and Carlton disagree on the content of that conversation.[3]  Viewing the record in the light most favorable to Carlton, Gay told Byrd that she was still in the hospital, but was "hoping to get released and be back to work [the following day]."  Byrd Depo., pp. 28-29, 38-39, 59; Crispin Decl., Ex. 3, p. 20.  Byrd assumed that Gay would be at work on Wednesday, March 4, 2009.  *Id*, p. 38.  Byrd does not make it her practice to follow up with employees who are on medical leave to find out their status.  *Id*, p. 33.  Instead, Byrd routinely refers employees to HR when there is a question regarding medical leave, and HR prepares any medical leave paperwork.  *Id*, p. 39.

On the morning of Wednesday, March 4, 2009, Gay asked one of her "early morning nurses" to contact Byrd on her behalf and let Carlton know she had not yet been discharged from the hospital.  Gay Depo., pp. 92-93.  However, no one ever told her such a call had been made, and Byrd denies any such contact.  *Id*, p. 93; Byrd Depo., p. 31.

---

[3]  According to Gay, Byrd assured her that she (Byrd) would contact Human Resources and "get [Gay's] "FMLA paperwork organized."  Gay Depo., pp. 86-87, 97-105, 150.  As a result, Gay "thought she meant . . . that I was then being protected under FMLA and that, broadly, that I could have my medical leave.  That I would be on medical leave and be protected by it."  *Id*, p. 150.  Byrd, meanwhile, disputes ever saying anything to Gay about medical leave paperwork and instead maintains that their conversation led her to assume that Gay would be back at work the following day.  Byrd Depo., pp. 38-39.

Some time in the afternoon of Wednesday, March 4, 2009, Gay was discharged from the hospital.  Gay Depo., p. 92.  At that time, Gay was provided a doctor's note releasing her from work through Monday, March 9, 2009.  *Id*, p. 162.

### 2.  March 6, 2009 Conversations Regarding Termination

On Friday, March 6, 2009, Byrd advised Davis that she had not heard from Gay since Tuesday, March 3, 2009.  Byrd Depo., p. 31.  That afternoon, Gay called Byrd to discuss going back to work on Monday and bringing in the doctors' notes for her hospital stay and for missing work.  Gay Depo., pp. 97-99.  During their  conversation, Byrd advised Gay that she (Gay) needed to contact Davis in HR because she had been no-show/no-call for three days.  *Id*, p. 99; Byrd Depo., p. 31.  Byrd understood that Gay would have been automatically terminated for not calling in for three days.  Byrd Depo., p. 31.  Gay told Byrd that the hospital faxed papers to Carlton and that she was going to call the hospital and call Davis.[4]  *Id*, p. 42.  Byrd informed Davis that Gay had told her that papers had been faxed from the hospital, but Davis responded that Carlton did not have any such paperwork.  *Id*.

Gay then telephoned Davis.  Gay Depo., pp. 101-02.  Davis informed Gay that she (Gay) had been terminated as a "no-call/no-show."  *Id*, p. 102.  Davis flatly refused to listen to Gay's explanation or look at the doctor's notes.  *Id*, pp. 104-05.  Instead, she informed Gay that she was fired and asked her when she wanted her final paycheck.  *Id*, p. 105.  Gay picked up her final paycheck near the end of the shift that same day.  *Id*.

///

---

[4] Gay disputes that she told Byrd that the hospital had or would be faxing paperwork to Carlton.  Gay Depo., p. 103. Instead, she contends that she had the release from work through March 9, 2009, "in hand" and was planning to bring it with her when she returned to work.  *Id*, pp. 103, 163.

## II.  Second Claim (Denial of Medical Leave in Violation of ORS 659A.183)

Gay seeks summary judgment as to liability on her Second Claim alleging a violation of OFLA.  OFLA makes it unlawful to "[d]eny family leave to which an eligible employee is entitled under ORS 659A.150 to 659A.186" or to "[r]etaliate or in any way discriminate against an individual with respect to . . . tenure . . . because the individual has inquired about the provisions of [the OFLA], submitted a request for family leave, or invoked the provisions of [the OFLA]."  ORS 659A.183(1) and (2).

Although Gay alleges no claim under the Family and Medical Leave Act of 1993 ("FMLA"), OFLA is to "be construed to the extent possible in a manner that is consistent with any similar provisions of the [FMLA]."  ORS 659A.186(2) (2007).[5]  Consistent with this legislative directive, Oregon courts have looked to federal law when interpreting the OFLA.  *See Yeager v. Providence Health Sys. Or.*, 195 Or App 134, 140-41, 96 P3d 862, 866 (2004); *Centennial Sch. Dist. No. 28J v. Or. Bureau of Labor & Indus.*, 169 Or App 489, 500-01, 10 P3d 945, 951 (2000).

The Ninth Circuit recognizes three types of claims under the FMLA:  (1) interference claims, when an employer interferes with an employee's exercise of rights under the FMLA, 29 USC § 2615(a)(1); (2) retaliation claims, when an employer discriminates against an employee for instituting or participating in proceedings or inquiries under FMLA, 29 USC § 2615(b); and (3) discrimination claims, when an employer discriminates against an employee for opposing any practice prohibited by the FMLA, 29 USC § 2615(a)(2).  *Bachelder v. Am. W.*

---

[5]  The 2009 revisions to ORS Chapter 659A became effective January 1, 2010.  Citations are to the 2007 version in effect during Gay's employment with Carlton.

*Airlines, Inc.*, 259 F3d 1112, 1124 (9th Cir 2001).  Gay's Second Claim alleges that Carlton

interfered with her right to medical leave by terminating her employment.  Carlton responds that

Gay abandoned her job, resulting in a non-discriminatory termination of her employment.

It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the

attempt to exercise, any right provided under" the FMLA.  29 USC § 2615(a)(1).  To establish an

interference claim under the FMLA, Gay must show that: (1) she exercised her rights under the

FMLA; (2) Carlton subsequently engaged in conduct that tended to chill the exercise of her

FMLA rights; and (3) Carlton's conduct was motivated by the exercise of her FMLA rights.

*Bachelder*, 259 F3d at 1124-26.

Gay contends that Carlton's termination of Gay under its job abandonment policy

violated the following regulation which Oregon has adopted to implement OFLA:

> (d)  An employee on OFLA leave who needs to take more leave
> than originally authorized must give the employer reasonable
> notice prior to the end of the authorized leave, following the
> employer's known, reasonable and customary procedures for
> requesting any kind of leave.  However, when an authorized period
> of OFLA leave has ended and an employee does not return to
> work, an employer having reason to believe the continuing absence
> may qualify as OFLA leave must request additional information,
> and may not treat a continuing absence as unauthorized unless
> requested information is not provided or does not support OFLA
> qualification.

OAR 839-009-0250(1)(d).

Carlton agrees that Gay's absences on March 2 and 3, 2009, were "covered" leaves for

purposes of the OFLA.  However, it contends that when that two day leave ended, this regulation

did not impose any obligation on Carlton to request additional information from Gay.  Instead,

Carlton argues that OAR 839-009-0250(d) applies only to situations where an "*authorized* period

of leave" obtained in advance has ended and excludes situations where the employee calls in on a

daily basis.  However, the language of the regulation contains no indication that it is limited only

to those situations where an employee has obtained advance authorization for a period of leave.

Federal regulations require an employee seeking FMLA leave to provide "at least verbal

notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave,

and the anticipated timing and duration of the leave."  29 CFR § 825.302(c).  "In all cases," the

same regulation instructs that "the employer should inquire further of the employee if it is

necessary to have more information about whether FMLA leave is being sought by the employee,

and obtain the necessary details of the leave to be taken."  *Id.*  However, Oregon's OFLA

regulation goes one step further; it is not instructive, but is mandatory as to the employer's duty.

It is undisputed that Carlton was notified on both March 2 and 3, 2009, that Gay was

hospitalized due to her high risk pregnancy.  Although she "hoped" to be released and back to

work on March 4, 2009, she did not show up at work.  Carlton has cited no authority for the

proposition that the term "authorized period of OFLA leave" cited in OAR 839-009-0250(1)(d)

does not include a daily period of leave such as that taken by Gay on March 2 and 3, 2009.  That

"authorized period of leave" ended when Gay's work day on March 3, 2009, ended.  It is

undisputed that Gay did not return to work on March 4, 5, or 6, 2009.  Under the plain text of the

OFLA regulation, if Carton had "reason to believe the continuing absence may qualify as OFLA

leave," then Carlton was not permitted to treat her continuing absence as unauthorized "unless

requested information [was] not provided or does not support OFLA qualification."

It is undisputed that Gay notified Carlton that she was hospitalized due to her high risk

pregnancy.  No reasonable juror could conclude that Carlton did not have "reason to believe" that

10 - FINDINGS AND RECOMMENDATION

Gay's continuing absence from March 4-6, 2009, may qualify as OFLA leave.  It is also

undisputed that neither Byrd nor Davis requested information concerning Gay's continuing

absence.  Instead, Carlton took the position that Gay was automatically terminated after her third

no-call/no-show on March 6, 2009.  While Gay's termination may have been a non-

discriminatory application of Carlton's no-call/no-show policy, it directly conflicts with an

applicable OFLA regulation that placed the onus on Carlton to make further inquiries concerning

Gay's continuing absence.  Accordingly, this court agrees with Gay that the undisputed evidence

entitles Gay to summary judgment as to liability on her Second Claim.

### III.  Fourth Claim (Failure to Accommodate in Violation of ORS 659A.112)

Gay also seeks summary judgment as to liability on her Fourth Claim which alleges a

failure to engage in an interactive process and failure to accommodate in violation of the ADA

and ORS 659A.112.[6]  For purposes of this motion, Carlton concedes that Gay is a disabled

person due to the combination of her diabetes and pregnancy.  Gay contends that Carlton failed to

engage in an interactive process and ultimately denied her a reasonable accommodation in the

form of time off from work on March 4-6, 2009.

The difficulty with Gay's position is a disputed issue of material fact as to whether Gay

actually requested an accommodation.  Under the ADA, "'[t]he interactive process is triggered

either by a request for an accommodation by a disabled employee or by the employer's

---

[6] As with the requirement that the OFLA be interpreted the same as the FMLA, ORS 659A.112(2) (2007) is to be "construed to the extent possible in a manner that is consistent with any similar provision of the federal Americans with Disabilities Act of 1990, as amended."  ORS 659A.139 (2007).

recognition of the need for such an accommodation.'"[7]  *Hoang v. Wells Fargo Bank, N.A.*, 724 F

Supp2d 1094, 1101 (D Or 2010), quoting *Barnett v. U.S. Air, Inc.*, 228 F3d 1105, 1112 (9th Cir

2000).  As does the ADA, Oregon law places the burden on the employee to initially inform the

employer of the need of an accommodation:

> Once a qualified employee . . . with a disability has requested
> reasonable accommodation or otherwise disclosed to the employer
> a disability that may require reasonable accommodation, the
> employer has a duty to initiate a meaningful interactive process
> with the employee . . . to determine whether reasonable
> accommodation would allow the employee . . . to perform the
> essential functions of a position held or sought.

OAR 839-006-0206.

Gay argues that she notified Carlton of her need for leave by advising Byrd that she

suffered from diabetes and resulting high risk pregnancy and by notifying Carlton that she had

become disabled due to hospitalization.  It is undisputed that a nurse informed Carlton that Gay

was hospitalized on March 2, 2009.  It is also undisputed that when Gay and Byrd spoke on

March 3, 2009, Gay never specifically said "I need more time off" or "I need accommodation in

the form of not needing to follow the call in policy and/or exemption from the job abandonment

policy."  Nevertheless, critical components of that conversation are disputed.  Gay contends that

Byrd assured her that she (Byrd) would get the "FMLA paperwork organized."  Gay Depo.,

pp. 86-87, 97-105, 150.  A reasonable inference from that testimony is that Byrd recognized that

Gay was requesting additional leave.  However, Bryd denies ever discussing FMLA paperwork

---

[7]  The general rule is that the employee must request an accommodation before the interactive process is triggered.  The exception, under which the interactive process is triggered when an employer recognizes that an accommodation is needed applies only applies if the employee is prevented by his or her disability from requesting the accommodation in the first instance.  *Brown v. Lucky Stores, Inc.*, 246 F3d 1182, 1188 (9th Cir 2001).  Nothing in the record indicates that Gay's disability prevented her from requesting an accommodation in the first instance.  Therefore, no interactive process was triggered unless Gay requested an accommodation, which as described above, is a disputed issue of material fact.

12 - FINDINGS AND RECOMMENDATION

with Gay.  Byrd Depo., pp. 38-39.  Instead, Byrd testified that Gay told her that, although she was still in the hospital, she was hoping to get released and be back to work on Wednesday, March 4, 2009.  *Id*.  If a factfinder believes Byrd's testimony, then a reasonable inference is that Gay requested no accommodation.  This fact dispute alone precludes summary judgment on the Fourth Claim.[8]

## RECOMMENDATION

For the reasons stated above, Gay's Motion for Summary Judgment (docket # 15) should be GRANTED on liability as to the Second Claim and DENIED as to the Fourth Claim.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due May 16, 2011.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED this 28th day of April, 2011.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

---

[8]  Carlton also contests summary judgment based on the lack of evidence that Gay was terminated "because of" her disability.  However, Gay seeks summary judgment only on the Fourth Claim for failure to accommodate and not on the Third Claim for disability discrimination.  Although Gay did not address this argument in her reply, to support her claims she presumably relies on the close timing between the onset of her disabling condition and the alleged refusal to accommodate and her resulting termination.  In any event, the dispute over the content of the March 3, 2009 conversation alone precludes summary judgment in favor of Gay on the Fourth Claim, and this court need not and does not address any other issue concerning the Fourth Claim.